UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SCOTLANDSHOP USA, INC.; and ANNA WHITE,

                                Plaintiffs,

v.                                                              1:23-CV-0703
                                                                (GTS/DJS)
US CITIZENSHIP AND IMMIGRATION SERVICES;
UR M. JADDOU, Director of USCIS; and MARY
ELIZABETH BRENNAN SENG, Acting Director,
Texas Service Center,

                                Defendants.
_____

APPEARANCES:                              OF COUNSEL:

HARRIS BEACH PLLC                         ALLISON B. FIUT, ESQ.
  Counsel for Plaintiff
726 Exchange Street, Suite 1000
Buffalo, NY 14210

GREEN & SPIEGEL, LLC                      STEPHEN J. ANTWINE, ESQ.
  Co-counsel for Plaintiff
1524 Delancey Street, 4th Floor
Philadelphia, PA 19102

U.S. DEPARTMENT OF JUSTICE                BRIAN SCHAEFFER, ESQ.
  Counsel for Defendants
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this immigration action filed by ScotlandShop USA, Inc.

("ScotlandShop"), and Anna White (collectively "Plaintiffs") against U.S. Citizenship and

Immigration Services ("USCIS"), Ur M. Jaddou in her official capacity as Director of the

USCIS, and Mary Elizabeth Brennan Seng in her official capacity as Acting Director of the

Texas Service Center (collectively "Defendants"), are (1) Plaintiffs' motion for summary judgment pursuant to Fed. R. Civ. P. 56, and (2) Defendants' cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. Nos. 21, 22.) For the reasons set forth below, Plaintiffs' motion for summary judgment is denied, and Defendants' cross-motion is for summary judgment is granted.

## I.    RELEVANT BACKGROUND

### A.    Plaintiffs' Complaint

Generally, in their Complaint, Plaintiffs claim that Defendants violated the Administrative Procedure Act ("APA") by denying her application for L-1A non-immigrant status. (Dkt. No. 1.) More specifically, Plaintiffs allege that Defendants' denial of her application was arbitrary, capricious, and contrary to the law in that the preponderance of the evidence presented establishes that Plaintiff White is an "executive" within the meaning of the relevant application. (*Id.*)

### B.    Parties' Statements of Undisputed Material Facts

The Court agrees with Defendants that, although summary judgement is the appropriate procedure through which to decide an APA-review case, the usual standards and rules under Fed. R. Civ. P. 56 do not apply; and instead, the district court should base its decision on a review of the administrative record compiled by the agency when it made its decision. (Dkt. No. 22, Attach. 2, at 1.) *See, e.g., Musclemakers v. U.S. Small Bus. Admin.*, 23-CV-0150, 2024 WL 4979168, at *4-6 (N.D.N.Y. Dec. 3, 2024) (Suddaby, J.). However, here, the Court has employed its Local Rule 56.1 procedure regarding statements of fact for three reasons: (1) the parties have gone to the trouble of proposing and responding a Statement of Material Facts, and

the Court has evaluated that proposed Statement by using the Certified Administrative Record or "CAR" (*see, infra,* Part I.B.1. of this Decision and Order); (2) a reliance on the Court's Local Rule 56.1 procedure does not inure to Defendants' detriment; and (3) in any event, the Court has also summarized, and relied on, the USCIS' Decision of March 9, 2023 (*see, infra,* Part I.C. of this Decision and Order).

Under N.D.N.Y. Local Rule 56.1, a party opposing summary judgment must file a response to the moving party's Statement of Material Facts that "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs," supported by "a specific citation to the record where the factual issue arises." N.D.N.Y. L.R. 56.1(b). This requirement is not a mere formality; rather "this and other local rules governing summary judgment are essential tools intended to relieve the district court of the onerous task of hunting through voluminous records without guidance from the parties." *LaFever v. Clarke*, 17-CV-1206, 2021 WL 921688, at *6 (N.D.N.Y. Mar. 11, 2021) (Hurd, J.) (quoting *Frantti v. New York*, 414 F. Supp. 3d 257, 284 [N.D.N.Y. 2019] [Hurd, J.]). Indeed, "[a] proper response to a movant's statement of material facts streamlines the summary judgment analysis 'by allocating responsibility for flagging genuine factual disputes on the participants ostensibly in the best position to do so: the litigants themselves.'" *LaFever*, 2021 WL 921688, at *7 (quoting *Alke v. Adams*, 16-CV-0845, 2018 WL 5297809, at *2 [N.D.N.Y. Oct. 25, 2018] [Hurd, J.]). "The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." N.D.N.Y. L.R. 56.1(b).

Applying this legal standard here, the following facts have been asserted and supported by record citations by each moving party, and either expressly admitted or denied without a supporting record citation by each non-moving party. (*Compare* Dkt. No. 21, Attach. 2 *with* Dkt. No. 22, Attach. 2.)

### 1.     Plaintiffs' Statement of Undisputed Material Facts

1.     ScotlandShop is a specialty retail company that produces and sells Scottish clothing through its online portal and physical retail locations in Duns, Scotland and Latham, New York.

2.     ScotlandShop was originally founded in 2002 by Plaintiff Anna White.

3.     Plaintiff White is the owner and Managing Director of ScotlandShop.

4.     ScotlandShop operates with twenty-five employees in Scotland and, currently, with two employees physically present at the New York State location.[1]

5.     Plaintiff ScotlandShop is fully incorporated in the United States and maintains all necessary tax and licensure for doing business in New York State.[2]

---

[1]     Defendants dispute this asserted fact, arguing that "[a]t the time of filing, Scotland Shop indicated they had two employees in the United States," but Defendants have failed to cite any evidence to support this assertion. (Dkt. No. 22, Attach. 2, at ¶ 4.) In any event, the evidence cited by Plaintiffs does not establish that four employees were at the New York location (as they assert); the cited charts show Plaintiff (who by her own admission is not currently working at the New York location because she is attempting to procure a visa), Emily Redman (who the chart acknowledges is also "visa pending"), Tara Griffin as the "Albany Store Manager," and Maria Snow as the "US Retail & Tailoring Assistant." (Dkt. No. 17, Attach. 2, at 13-14.) Moreover, Plaintiffs' petition states that, at the time of that petition, Plaintiff ScotlandShop had two employees currently in the United States. (Dkt. No. 17, Attach. 1, at 17.) The Court has therefore altered the asserted fact to better reflect the cited evidence.

[2]     Defendants state in response that they do not know whether this asserted fact is correct, but indicate that they do not dispute that the cited evidence contains relevant business, tax and licensure filings related to New York State. (Dkt. No. 22, Attach. 2, at ¶ 5.) Because lack of

6.      Plaintiff White is the sole executive of ScotlandShop, and her duties as Managing

Director include business development, business strategy, and team development.[3]

7.      In her executive position, Plaintiff White maintains full discretionary authority to

establish operational, strategic, and performance objectives for the company.[4]

8.      On January 5, 2022, Plaintiff White received approval from Defendant USCIS for

an L-1A "New Office" visa based on her executive role as Managing Director of ScotlandShop.[5]

9.      On April 12, 2022, Plaintiff White was denied the formal visa related to this L-1A

"New Office" classification by the U.S. Department of State's U.S. Embassy in London,

England, which indicated that Plaintiff White was inadmissible to the United States under

Immigration and Naturalization Act ("INA") Section 212(a)(6)(E), which denies admission to

---

knowledge does not constitute a proper denial, this fact is deemed to be admitted.  *See Birchmore v. Granville Cent. Sch. Dist.*, 18-CV-1456, 2021 WL 22606, at *1 n.3 (N.D.N.Y. Jan. 4, 2021) (Sharpe, J.) (deeming to be admissions responses to the statement of material facts in which the plaintiff asserted she lacked knowledge to admit or deny certain facts); *accord Stamm v. Onondaga Cnty.*, 17-CV-0579, 2019 WL 1004527, at *2 (N.D.N.Y. Mar. 1, 2019) (Suddaby, C.J.).

[3]      This asserted fact is deemed admitted for essentially the same reason discussed above in Note 2 of this Decision and Order.

[4]      This asserted fact is deemed admitted for essentially the same reason discussed above in Note 2 of this Decision and Order.

[5]      Defendants object to the asserted fact because, they argue, it is not at issue in this litigation and outside the scope of the CAR.  (Dkt. No. 22, Attach. 2, at ¶ 8.)  However, whether this fact is material is more appropriately assessed by the Court as part of its consideration of the legal issues in this case.  Further, a copy of this approval is indeed contained within the CAR. (Dkt. No. 17, Attach. 1, at 32.)  Because Defendants do not deny the fact asserted or cite any contrary evidence, this fact is deemed to be admitted.

those who "encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States."[6]

      10.     The U.S. Embassy did not provide any basis or records for this visa denial.[7]

      11.     On November 29, 2022, Plaintiff ScotlandShop filed a Form I-129 Petition for Non-Immigrant Worker with Defendant USCIS seeking "L-1A manager or executive" classification for Plaintiff White.[8]

      12.     Plaintiff White sought to apply for this visa pursuant to her executive role and based on her "executive capacity" as defined in the INA.[9]

      13.     On December 8, 2022, Defendant USCIS issued a Request for Evidence ("RFE") to Plaintiffs.

---

[6]    This asserted fact is deemed admitted for essentially the same reason discussed above in Note 5 of this Decision and Order.   The Court notes that a copy of a letter indicating this denial is contained within the CAR.  (Dkt. No. 17, Attach. 1, at 28.)

[7]    This asserted fact is deemed admitted for essentially the same reason discussed above in Note 5 of this Decision and Order.  Further, although Plaintiffs do not include a citation to the CAR in support of this fact, it appears supported by the same letter they relied upon to support the assertion in Statement of Fact Number 9 above.

[8]    Defendants dispute this asserted fact, stating that the relevant evidence shows that Plaintiffs checked the "L-1A manager or executive box" as opposed to Plaintiffs' assertion that she was specifically seeking classification in an executive role.  (Dkt. No. 22, Attach. 2, at ¶ 14.)  The Court agrees that nothing in the cited petition clearly shows that Plaintiff White was seeking a visa specifically as an executive (as opposed to as a manager).  The Court has therefore altered the above-asserted fact to reflect the record evidence.

[9]    Defendants dispute this asserted fact, but the evidence cited by Plaintiffs – specifically a letter from her legal counsel appended to her petition – contains statements supporting a finding that Plaintiff White was seeking to be considered in relation to her executive role; indeed, the executive nature of her role is emphasized multiple times in this letter.  (Dkt. No. 17, Attach. 1, at 28-30.)  In the absence of evidence to the contrary, this fact is deemed admitted.

14.    The RFE contained the following statement: "The record does not demonstrate that the beneficiary's intended U.S. employment meets all four criteria defined in the definition of managerial capacity."

15.    The RFE contained the following statement: "USCIS is unable to ascertain whether the beneficiary will work primarily in a managerial position."

16.    On February 24, 2023, Plaintiffs responded to the RFE and provided more than 300 additional documents.

17.    On March 9, 2023, Defendant USCIS formally denied Plaintiffs' request for L-1A Intracompany Transferee classification.[10]

### 2.    Defendants' Statement of Undisputed Material Facts

1.    On March 9, 2023, Defendant USCIS issued its decision denying Plaintiff ScotlandShop's L-1A petition seeking to classify Plaintiff White as an intracompany transferee.

2.    The Government filed the CAR, consisting of 562 pages, on September 26, 2023.

### C.    USCIS' Decision

In its decision of March 9, 2023, USCIS considered (a) Plaintiff White's functions in her position abroad, (b) Plaintiff White's functions to be performed in the United States, and (c) her approval on a prior petition.  (Dkt. No. 17, Attach. 4, at 89-97.)  As to Plaintiff White's functions in her position abroad, USCIS found that Plaintiffs' submission of evidence was deficient even after responding to the RFE, stating that (a) the fact that Plaintiff White holds a senior position

---

[10]    The Court agrees with Defendants that the cited portion of the CAR does not support, as an undisputed matter of fact, that the reason for the denial of Plaintiffs' petition was specifically because that petition was assessed "in relation to 'managerial capacity.'"  (Dkt. No. 22, Attach. 2, at ¶ 21.)

"does not necessarily establish eligibility for classification as an intracompany transferee in an executive capacity," (b) she may possess discretionary authority and decision-making, but the position descriptions provided were "insufficient to establish that her actual duties are primarily executive in nature," (c) although she has the title of Managing Director, "the evidence furnished does not establish that [her] actual duties performed are primarily executive in nature," (d) the duties she listed in response to the RFE were "general, repetitive, and appear to simply paraphrase the statutory definition of executive capacity" and do not establish that Plaintiff White spent the "primary portion of her time directing management," such that "USCIS is unable to determine whether the beneficiary's subordinates qualify as management and that they relieve the beneficiary from conducting routine day-to-day job duties." (*Id.* at 92.)  USCIS concluded that, "based on the totality of the evidence, it appears that [Plaintiff White] is primarily performing routine tasks associated with the operations of her company and will not be relieved from performing non-qualifying job duties," and, as a result, she had not established that she had been employed abroad in a position that was executive.  (*Id.*)

As to Plaintiff White's functions to be performed in the United States, USCIS found that Plaintiffs' submission of evidence was deficient even after responding to the RFE, stating that (a) the evidence provided did not demonstrate executive capacity because participation in meetings (without appropriate details) and hiring/recruiting are not primarily executive duties, (b) the organizational chart submitted for the U.S. location showed two employees, both of whom are listed with managerial titles, but no subordinate employees and no evidence indicating any non-managerial employees who would be performing the non-qualifying, operational, and administrative duties of that location, (c) there is no evidence to show that any other employees

would relieve either Plaintiff White or the apparent management employees from involvement in operational functions, and merely placing herself at the top of the chart is insufficient to show that she would be directing the management of that location, and (d) given the small number of employees at the U.S. location, "it is likely that [Plaintiff White] would have to compensate for those staffing deficiencies in order to meet the company's immediate operational needs." (*Id.* at 95-96.) USCIS therefore concluded that Plaintiffs had not established that Plaintiff White would be employed primarily in a managerial or executive capacity in the United States. (*Id.* at 96.)

USCIS additionally found that Plaintiffs' petition was requesting new employment and consulate notification and was not an extension request of a previous petition, and therefore was a separate proceeding. (*Id.* at 96.) It recognized also that the prior petition had been a "New Office" petition, and that, even if it construed Plaintiffs' new petition as requesting an extension of the previously granted petition, "the eligibility requirements for an initial 'New Office' filing is [sic] not the same as a 'New Office' extension," and "[a]s such, this still would be considered a material change in circumstances and deference is not applicable." (*Id.*)

### D.    Parties' Briefing on the Motions for Summary Judgment

#### 1.    Plaintiffs' Memorandum of Law

Generally, in support of their motion for summary judgment, Plaintiffs assert two arguments. (Dkt. No. 21, Attach. 3.) First, Plaintiffs argue that Defendant USCIS' decision denying her petition was arbitrary and capricious, because (a) it assessed Plaintiff White's role under a "managerial capacity" framework as opposed to an "executive capacity" framework, and (b) had it properly considered her role under the executive capacity framework, it would have found that her petition should have been granted. (*Id.* at 11-18.) Relatedly, Plaintiffs argue that

Defendant USCIS erred when assessing the managerial function of employees at Plaintiff ScotlandShop's location in the United States, because it applied requirements that are not imposed by the relevant statutes. (*Id.* at 16-18.)

Second, Plaintiffs argue that Defendant USCIS' decision was arbitrary and capricious, because it failed to give any deference to a prior determination approving a L-1A "New Office" petition on behalf of Plaintiff White. (*Id.* at 19-25.) More specifically, Plaintiffs argue that Defendant USCIS has not provided a sufficient explanation regarding any change in circumstances that justifies its choice to not afford deference to that prior determination, and it failed to provide Plaintiff White with a reasonable opportunity to respond to any new material or derogatory information. (*Id.*) Plaintiffs further argue that, if Defendant USCIS believed a material change in circumstances had occurred since Plaintiff White's original petition, it should have sought to revoke its approval of that petition. (*Id.* at 22-25.)

### 2.    Defendants' Opposition Memorandum of Law and Cross-Motion

Generally, in their opposition memorandum of law and cross-motion for summary judgment, Defendants make four arguments. (Dkt. No. 22, Attach. 1.) First, Defendants argue that the relevant determination was not arbitrary or capricious, because Defendant USCIS correctly found that Plaintiff White's position in Scotland and prospective position in the United States are not primarily executive in that it found that her description of her duties was too general and that the evidence presented suggests that she was and would be performing routine operational tasks. (*Id.* at 10-15.) Defendants further argue that Defendant USCIS properly considered the size of Plaintiff ScotlandShop's operations in the United States, because one of the relevant considerations is whether the organization's operations are substantial enough to

10

support a manager, and Defendant USCIS concluded that Plaintiff ScotlandShop's two United States-based employees were insufficient to reasonably show that Plaintiff White would not be performing significant non-executive duties as part of her prospective work at that location. (*Id.* at 14-15.)

Second, Defendants argue that Defendant USCIS complied with its own policies when choosing not to defer to the approval on the prior petition, because (a) the policy upon which Plaintiffs rely applies to extensions of petitions, not new petitions, and Plaintiffs here filed a new petition, (b) Defendant USCIS specifically found that, even if the new petition was treated as an extension, the eligibility requirements between the two petitions were not the same and therefore there were material changes in circumstances, (c) Defendant USCIS did acknowledge the prior approval and found that such prior approval was not appropriate, (d) Plaintiffs' arguments about new information and unknown derogatory information are red herrings, because Plaintiffs were already aware of the existence of the prior approval and the reasons why the U.S. Department of State refused to issue her a visa on that prior approval, and (e) there is nothing to support Plaintiffs' speculative assertion that Defendant USCIS used that prior Department of State denial as a pretext for denying her more recent petition. (*Id.* at 15-18.) Defendants further argue that the fact that the prior approval was not revoked makes no difference here because, as Plaintiffs acknowledge, the visa period that would have been covered by that petition was set to expire soon after Plaintiffs filed the current petition, and, in any event, Plaintiffs withdrew their prior application and therefore there was no determination to afford deference. (*Id.* at 18-20.) Defendants also argue that Defendant USCIS was not required to provide an explanation for why

it reached a different result on the current petition and that it remained Plaintiffs' burden to prove entitlement to a visa.  (*Id.* at 20.)

Third, Defendants argue that Defendant USCIS properly applied the statutory and regulatory provisions when assessing Plaintiffs' petition.  (*Id.* at 20-22.)  More specifically, Defendants argue that (a) Plaintiffs' petition does not seek approval only upon the basis of executive capacity, but also contains references to managerial capacity and therefore any assessment of whether Plaintiff White was a manager was not inappropriate, and (b) contrary to Plaintiffs' argument, Defendant USCIS did consider Plaintiff White's status explicitly under an executive capacity, not only under a managerial capacity.  (*Id.*)

Fourth, Defendants argue that Defendant USCIS did not rely on the Department of State's finding of inadmissibility as a basis for denying the current petition, and Plaintiffs have offered no evidence to support that speculative assertion.  (*Id.* at 22-23.)

### 3.    Plaintiffs' Combined Reply / Opposition Memorandum of Law

Generally, in their combined reply / opposition memorandum of law, Plaintiffs argue that Defendant USCIS' determination was arbitrary and capricious, because it ignored evidence presented that substantiated that Plaintiff White's duties were in an executive capacity as required for approval of her petition, noting that the determination discusses only a selective portion of the evidence and fails to properly consider the evidence as a whole.  (Dkt. No. 25, at 1-12.)

### 4.    Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiffs' opposition memorandum of law, Defendants make two arguments.  (Dkt. No. 27.)  First, Defendants argue that Plaintiffs' arguments amount to little

more than a request that this Court substitute its judgment and interpretation of the record for that of Defendant USCIS, which is not the proper role of the Court. (*Id.* at 2.)

Second, Defendants argue that Defendant USCIS' determination regarding whether Plaintiff White properly showed sufficient work in an executive capacity is reasonable and that the Court cannot infer that Defendant USCIS ignored or failed to consider evidence merely because it did not specifically discuss that evidence in the determination. (*Id.* at 2-6.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[11] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the

---

[11]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

basis for its motion, and identifying those portions of the . . . [record] which it believes

demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S.

317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must

come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ.

P. 56(a), (c), (e).[12]

      Implied in the above-stated burden-shifting standard is the fact that, where a non-movant

willfully fails to respond to a motion for summary judgment, a district court has no duty to

perform an independent review of the record to find proof of a factual dispute.

      Of course, when a non-movant willfully fails to respond to a motion for summary

judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that

the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

Rather, as indicated above, the Court must assure itself that, based on the undisputed material

facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v.*

*Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.);

N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten

the movant's burden.

      For these reasons, this Court has often enforced Local Rule 56.1 by deeming facts set

forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that

---

[12]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to
the movant's Statement of Material Facts, which admits or denies each of the movant's factual
assertions in matching number paragraphs, and supports any denials with a specific citation to
the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

statement.[13]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).[14]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

**B.**  **Legal Standard Governing Review of an Agency Decision Under the Administrative Procedure Act**

---

[13]  Among other things, Local Rule 56.1(b) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 56.1(b).

[14]  *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

"When a party challenges agency action under the APA, the district court acts as an 'appellate tribunal' and the case on review presents 'a question of law.'" *Rosati v. Mayorkas*, 691 F. Supp. 3d 597, 602 (N.D.N.Y. 2023) (Hurd, J.). "[R]eview of agency actions under the Administrative Procedure Act is 'narrow and deferential.'" *Am. Cruise Lines v. United States*, 96 F.4th 283, 286 (2d Cir. 2024) (quoting *Kakar v. U.S. Citizenship & Immigr. Servs.*, 29 F.4th 129, 132 [2d Cir. 2022]). That review is "'limited to examining the administrative record to determine whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Kakar*, 29 F.4th at 132 (quoting *Nat. Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 97 [2d Cir. 2001]). "Thus, [u]nder the APA, we may set aside an agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Kakar*, 29 F.4th at 132 (quoting *Alzokari v. Pompeo*, 973 F.3d 65, 70 [2d Cir. 2020]). "An agency's decision is arbitrary and capricious only if 'the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Am. Cruise Lines v. United States*, 96 F.4th at 286; *see also Ohio v. Env't Prot. Agency*, 603 U.S. — , 144 S.Ct. 2040, 2053 (2024) ("An agency action qualifies as 'arbitrary' or 'capricious' if it is not 'reasonable and reasonably explained.'") (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 [2021]).

In reviewing an administrative decision, "'[t]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Nwankwere v. Jaddou*, 22-CV-1212, 2023 WL

16

5835785, at *6 (E.D. Ca Sept. 8, 2023) (quoting *United States Citrus Sci. Council v. United States Dep't of Agric.*, 312 F. Supp. 3d 884, 894 [E.D. Cal. 2018]). However, "a court may not 'substitute its judgment for that of the agency,'" but "must ensure, among other things, that the agency has offered 'a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made.'" *Ohio v. Env't Prot. Agency*, 144 S.Ct at 2053 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 [2009]; *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 [1983]).

## III.    ANALYSIS

After carefully considering whether Defendant USCIS' decision was arbitrary or capricious, the Court answers this question in the negative for the reasons stated in Defendants' memoranda of law. *See, supra* Parts I.D.2 and 4 of this Decision and Order. To those reasons, the Court adds the following four points.

First, Plaintiffs' argument that Defendant USCIS assessed Plaintiff White's petition under the criteria for managerial capacity as opposed to executive capacity is simply untenable. As was discussed above in Part I.C of this Decision and Order, Defendant USCIS' decision clearly indicates that Plaintiffs' RFE response–and ultimately her petition–was deficient because they had not shown that Plaintiff White met the criteria under *either* a managerial or executive capacity, and its analysis plainly focuses most heavily on their having failed to show that she met the criteria related to executive capacity. (Dkt. No. 17, Attach. 4, at 89-96.) Specifically, USCIS discussed Plaintiff White's duties both abroad and as she would function in the United States and explained why it believed the evidence submitted did not sufficiently show that her duties were

primarily executive in nature or that she spent the primary portion of her time directing management.  (*Id.*)

In fact, Plaintiffs' argument ignores much of Defendant USCIS' final decision, arguing that Defendant USCIS erred because the RFE referenced a need for Plaintiffs to demonstrate that Plaintiff White was acting in a managerial capacity, and citing portions of the final decision in which Defendant USCIS discussed or quoted the RFE.  (Dkt. No. 21, Attach. 3, at 13-14.) Although it is true that Defendant USCIS referenced managerial capacity at certain places in the final decision, those references do not change the fact that Defendant USCIS nonetheless clearly considered Plaintiffs' petition under the executive capacity when rendering the final decision. Plaintiffs' argument that Defendant USCIS failed to evaluate the petition according to the appropriate capacity is therefore rejected.

Second, Plaintiffs argue that Defendants acted in an arbitrary and capricious manner in that they inappropriately failed to consider the size and circumstances of Plaintiff ScotlandShop by essentially requiring, against their own regulations, another level of employees below the managers at its United States retail location.  (Dkt. No. 21, Attach. 3, at 17-18.)  As an initial matter, the size of the organization was not the only reason Defendant USCIS found Plaintiffs' application evidence to be insufficient; it also noted that evidence that Plaintiff White would participate in meetings did not explain what duties were involved in attending those meetings, and that participating in hiring and recruiting employees is a human resource responsibility rather than an executive function.  (Dkt. No. 17, Attach. 4, at 95.)  Defendant USCIS does rely also on the fact that, at the time the application was filed, the United States branch had only two employees, both of whom were listed as "managers" with no subordinate staff; but it also notes

18

that the fact that both of those employees are "managers" left it unclear who would be performing operational and administrative duties given the fact that there were no apparent non-managerial employees to perform those tasks. (*Id.*) Defendant USCIS therefore found that, because of this uncertainty and the small number of staff, it was "likely that [Plaintiff White] would have to compensate for those staffing deficiencies in order to meet the company's immediate operational needs." (*Id.* at 95-96.) The decision therefore makes clear that it was not merely the size of the United States branch that formed the basis of Defendant USCIS' conclusion, but rather the lack of evidence substantiating who would be performing the operational and administrative work at the branch.

Plaintiffs does not indicate what evidence in the CAR would require a different conclusion, but rather relies on the fact that Plaintiff White is "founder and Managing Director" of ScotlandShop, and on the assertion that she "spends most of her time performing executive tasks"; yet these arguments do not show that USCIS' decision was arbitrary and capricious. Plaintiffs admit that Plaintiff White "necessarily performs *some* non-executive tasks" due to "the small size of ScotlandShop, which only opened its U.S. subsidiary in 2021." (Dkt. No. 21, Attach. 3, at 18.) Plaintiffs assert that these are only a "very small percentage of her work," but she has not cited any evidence from the CAR that would suggest Defendant USCIS' finding to the contrary is unreasonable. To the extent Plaintiffs argue that Plaintiff White was involved in creating and executing incorporation documents, tax registration materials, sales contracts, and other such documents, that fact might show that she has executive powers, but it does not show that her day-to-day duties at the United States location would be primarily executive in nature, as she has cited no evidence in the CAR that she would engage in such tasks on a regular basis.

19

Moreover, Plaintiffs' arguments regarding whether the managerial employees at the United States branch should be considered "functional managers" despite having no subordinates is beside the point.  Defendant USCIS did not rely on the fact that those employees did not have any subordinates in the abstract or find that subordinate employees are required, but rather determined that the lack of lower-level employees raised the question of who was performing the operational and administrative duties required to complete the day-to-day work of the branch. There was nothing unreasonable in Defendant USCIS pointing to the fact that the evidence did not adequately establish whether those functions would be taken care of without Plaintiff White's involvement when determining whether there was a likelihood that Plaintiff White's duties at the branch might not be primarily executive or managerial in nature.  *See DuMarc Am., Inc. v. Cuccinelli*, 20-CV-0007, 2021 WL 168931, at *5 (D.D.C. Jan. 4, 2021) (upholding USCIS' finding that plaintiff was not an executive or manager where she had failed to submit evidence related to subordinate employees that would show that the organization has "a functioning operational staff to relieve [the applicant] of 'day-to-day duties,'" and that such analysis was proper under the statutory and regulatory framework); *see also Q Data Consulting, Inc. v. INS*, 293 F. Supp. 2d 25, 29 (D.D.C. 2003) (upholding INS denial of L-1A petition where it could "reasonably infer that many of the office's [non-executive or non-managerial] responsibilities would gravitate towards [the applicant]" where there was no evidence of sufficient subordinate staff to relieve the applicant from performing non-qualifying duties). Defendant USCIS therefore did not rely on the size of the branch in the way Plaintiffs argue, but

rather on what the evidence failed to establish related to the day-to-day operations of the branch.[15]

Third, Plaintiffs' argument that Defendant USCIS ignored or failed to consider relevant evidence is unfounded. The fact that Defendant USCIS may not have specifically addressed certain evidence in its decision does not mean that it failed to consider that evidence. An agency adjudicator need not discuss every piece of evidence in order to show that it considered such evidence. *See Mestanek v. Jaddou*, 93 F.4th 164, 174 (4th Cir. 2024) ("But we decline to impose on the agency a requirement to discuss every piece of evidence it receives, . . . especially when it is clear from the decision that USCIS did address the rebuttal evidence."); *D.W. v. Raufer*, 839 F. App'x 723, 727 (3rd Cir. 2020) (noting that USCIC "is not required to 'discuss every piece of evidence mentioned by an asylum applicant'") (quoting *Green v. Att'y Gen. of U.S.*, 604 F.3d 503, 509 [3rd Cir. 2012]); *Diamond Miami Corp. v. U.S.C.I.S.*, 18-CV-24411, 2019 WL 4954807, at *2 (S.D. Fl Oct. 8, 2019) ("In making its decision, '[t]he agency is not required to discuss every piece of evidence, so long as it gives reasoned consideration to the evidence submitted.'") (quoting *Xunbing Liu v. U.S. Att'y Gen.*, 440 F. App'x 718, 719 [11th Cir. 2011]). There is no reason to believe from the written decision that Defendant USCIS failed to consider

---

[15]    The Court notes that, in documentation related to the submission of evidence in response to the RFE, Plaintiffs indicated that, as to the updated organizational charts, "the U.S. organizational chart only includes manager-level employees. Retail staff are not included on the chart, but are included in all payroll-related documentation." (Dkt. No. 17, Attach. 4, at 53.) The submitted payroll information shows that, although other individuals did work at the New York branch in 2022 besides those listed on the organizational chart, the only two employees who worked there beyond July 2022 were Tara Griffin and Maria Snow. (Dkt. No. 17, Attach. 1, at 59; Dkt. No. 17, Attach. 2, at 100, 102, 104, 108, 112-57.) As noted above in the Statement of Undisputed Material Facts, Plaintiffs' relevant petition was filed on November 29, 2022. As a result, there is no evidence in the CAR that there were any employees working at the New York branch other than Tara Griffin and Maria Snow as of the date Plaintiffs filed the petition.

the relevant evidence.  The decision notes that Plaintiffs' submission of evidence in response to

the RFE included "[d]ocuments regarding the staffing" and "[d]ocuments pertaining to the U.S.

company's personnel and payroll," which would appear to encompass evidence such as resumes

of employees that Plaintiffs assert was ignored.  (Dkt. No. 17, Attach. 4, at 92.)  Moreover, to the

extent that Plaintiffs argue that the evidence Defendant USCIS allegedly ignored would have

resulted in a different finding, the Court, after reviewing the record, finds that Defendant USCIS'

conclusions related to the nature of Plaintiff's job duties in the United Kingdom were reasonable

and therefore must be upheld.  Although Plaintiffs might disagree with Defendant USCIS'

assessment that Plaintiff White's duties are not sufficiently "executive" in nature, where the

agency's finding is reasonable, it is not the role of the Court to reweigh the evidence to reach a

contrary conclusion.

Moreover, as was discussed above, Defendant USCIS did not err in its assessment of

Plaintiff White's projected duties at the United States location.  Therefore, even if the Court were

to find that Defendant USCIS acted in an arbitrary and capricious manner in finding her United

Kingdom-based duties to not be executive in nature, Plaintiffs were still required to also show

that her United States-based duties were going to be executive in nature.  Plaintiffs appear to

imply that the fact that she works in an executive capacity in the United Kingdom is sufficient

because both that branch and the United States branch are part of the same "organization," of

which she is the head.  (Dkt. No. 25, at 10-11.)  However, 8 C.F.R. § 214.2(l)(1)(ii)(A) states that

an intracompany transferee is an individual who "has been employed abroad continuously for

one year by a firm or corporation or other legal entity or parent, branch, affiliate, or subsidiary

thereof, and who seeks to enter the United States temporarily *in order to render his or her*

*services to a branch of the same employer or a parent, affiliate, or subsidiary thereof in a capacity that is managerial, executive, or involves special knowledge*."   8 C.F.R. § 214.2(l)(1)(ii)(A) (emphasis added); *see also* 8 C.F.R. § 214.2(l)(3) (indicating that the petitioner must include evidence that their year of prior employment abroad was, as relevant, in a managerial or executive capacity, as well as that the employment in the United States will be in a managerial or executive capacity).  The plain meaning of this regulation therefore indicates that the services rendered to the branch located in the United States must be in a managerial or executive capacity.  Thus, the nature of Plaintiff White's expected duties specifically for the United States branch must themselves be sufficiently executive or managerial in order to qualify under the L-1A Intracompany Transferee standard.  Therefore, even if the Court were to find that Defendant USCIS erred in its consideration of Plaintiff White's duties toward the United Kingdom branch (which it does not), the fact that Plaintiffs have not shown error in the assessment of her prospective duties for the United States branch would still merit upholding Defendant USCIS' ultimate decision to deny the petition.

Fourth, Plaintiffs argue that Defendants arbitrarily and capriciously failed to afford deference to its approval of her prior L-1A "New Office" petition, used her visa denial as a pretext for denial of her new petition, and failed to provide a cogent explanation as to what "change in material circumstances" caused her to no longer meet the eligibility criteria or an opportunity to respond to any new material information informing that decision.  (Dkt. No. 21, Attach. 3, at 19-21.)  In its decision, Defendant USCIS noted that it "will generally defer to its prior determination of eligibility" when adjudicating a subsequent petition or application, but concluded that no such deference was warranted because Plaintiffs' petition was "a separate

proceeding and not considered a prior determination" given that it was "requesting new employment and consulate notification [and] as such [] is not an adjudicating extension request." (Dkt. No. 17, Attach. 4, at 96.)  Defendant USCIS therefore explicitly indicated that it found that the decision on the prior petition did not constitute a "prior determination" and therefore was not entitled to deference.

The policy upon which Plaintiffs' argument relies, which is found in the USCIS Policy Manual, Volume 2, Chapter 4, explicitly applies to extensions.  (Dkt. No. 17, Attach. 3.)  Indeed, the specific section that Plaintiffs cite (as the basis for their argument that not only was deference warranted, but also that certain opportunities to respond were required if deference was not afforded) is entitled "Extension of Petition Validity," and discusses affording deference to a prior approval in the context of "[a] request for an extension of petition validity," which "follows a previous finding of eligibility for the classification."  (*Id.* at 1-2.)  Because, as Defendant USCIS correctly found, Plaintiff's relevant petition was not a request for extension on her New Office petition that had previously been granted, but rather a new and separate L-1A petition for an Intracompany Transferee, this policy does not apply in this situation.  As a result, Defendant USCIS had no responsibility to afford deference to the previous New Office approval under this policy, or to provide the articulation of reasons or opportunity to respond that the policy requires.

Similarly, Plaintiffs' arguments regarding an alleged failure to afford her with an opportunity to respond to derogatory information related to a "material change in circumstances" also fail for multiple reasons. Most prominently, this citation to a change in circumstances occurred in the context of an alternative finding in which Defendant USCIS assumed that Plaintiffs' petition was an extension request on the prior New Office petition, which, as already

24

discussed, is entirely hypothetical because Defendant USCIS had already found that this petition was *not* an extension request of the prior approved petition.  Moreover, the "material change in circumstances" referenced is not any derogatory information, but rather, according to Defendant USCIS, the fact that "the eligibility requirements for an initial 'New Office' filing is [sic] not the same as a 'New Office' extension."  (Dkt. No. 17, Attach. 4, at 96.)  Defendant USCIS therefore clearly found that, even under this hypothetical alternative situation, deference would not be warranted because an extension request would have been subject to different eligibility requirements than the initial "New Office" petition was, a legal finding that is supported by the case law Defendants cite in their response memorandum of law.  (Dkt. No. 22, Attach. 1, at 17-18.)  There is no apparent legal error or arbitrary and capricious action in Defendant USCIS' choice not to afford deference to the finding on the prior New Office petition.

Finally, Plaintiffs have not cited any evidence in the CAR or otherwise to support their assertion that Defendant USCIS relied even in part on the State Department's finding of inadmissibility related to the previous application.  The fact that Defendant USCIS mentioned "your statement of the Embassy's refusal to issue a visa" does not lead to any inference of an improper reliance on the fact of that visa denial.  As discussed earlier, Defendant USCIS provided reasons supported by the CAR, and its explanations for its determination indicate its conclusion was not arbitrary or capricious.[16]

---

[16]      To the extent that Plaintiffs argue error in the fact that Defendant USCIS did not revoke the approval on the prior petition, Defendants are correct that this fact makes no difference, because the prior petition was expired by the time of Defendant USCIS' determination, and the CAR shows that Plaintiffs, through a letter by ScotlandShop's Operations Manager, Katie Bidwell, withdrew that prior petition.  (Dkt. No. 17, Attach. 1, at 34 ["Accordingly, this also serves as the withdrawal of Ms. White's prior petition."].)

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' motion for summary judgment (Dkt. No. 21) is **<u>DENIED</u>**;

and it is further

**ORDERED** that Defendants' cross-motion for summary judgment (Dkt. No. 22) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiffs' Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: December 17, 2024
       Syracuse, New York


Glenn T. Suddaby
U.S. District Judge

26